# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Peter C. Kelley, Affiant, a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, state as follows:

## Introduction and Affiant Background

I am a Special Agent with the ATF and have been since September 2005. I received training at the Federal Law Enforcement Training Center and at the ATF National Academy, both located in Glynn County, Georgia. As an ATF Special Agent, I have participated in and conducted dozens of investigations involving firearm trafficking and possession of firearms by persons including felons, gang members, narcotics users and narcotics traffickers and have become familiar with the crimes commonly committed by criminal street gang members and their associates. Based on my training and experience as an ATF Special Agent, I am familiar with the federal firearms and narcotics laws, and other laws as they pertain to violent crime.

1. This affidavit is based on an ongoing, multi-agency investigation into the criminal activities of a criminal organization known as the "Wendover Street Gang" and a subset of the Wendover gang referred to as "NOB" (Norton, Olney and Barry Streets), collectively "NOB/Wendover." NOB/Wendover is a Boston street gang comprised primarily of individuals of Cape Verdean descent. The agencies involved in the investigation include, but are not limited to, ATF, the Boston Police Department (BPD) and the Massachusetts State Police (MSP).

2. NOB/Wendover gang members and associates are currently being investigated for offenses involving racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); violent crimes in aid of racketeering, in violation of 18 U.S.C. § 1959; possession of firearms in furtherance of crimes of violence and drug trafficking crimes, in violation of 18 U.S.C. § 924(c); engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A); unlawful

possession of machineguns, in violation of 18 U.S.C. § 922(o); and conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846 (the "Target Offenses"). Specifically, NOB/Wendover gang member ANTON LOPES is being investigated for violations of 18 U.S.C. §§ 1962(d), 922(o), 924(c) and 21 U.S.C. § 846.

3. I am submitting this affidavit in support of an application for a warrant to search two cell phones more specifically described as:

a. one pink and white Apple iPhone S, Model A1633; and

b. one black Apple iPhone Model 11 Pro;

(collectively, the "TARGET TELEPHONES"), described in Attachment A. The TARGET TELEPHONES are currently located at the ATF Boston Field Division Office in Boston, MA. Based on my training and experience, and as set forth below, there is probable cause to believe the TARGET TELEPHONES contains evidence, fruits, and instrumentalities of the Target Offenses.

4. The facts in this affidavit come from my personal observations and review of oral and written reports by other law enforcement officers, records including information from database checks and my training and experience. This affidavit is intended to show merely that there is probable cause for the requested search warrants and does not set forth all of my knowledge about this matter.

## Probable Cause

5. On December 16, 2019, BPD and the Quincy Police Department executed a search warrant for the residence located at 121 South Walnut Avenue in Quincy, MA and for the person of ANTON LOPES. Prior to the execution of the residential warrant, officers observed LOPES driving an Infinity sedan registered to him on Bergin Parkway in Quincy. LOPES was removed from the vehicle and brought back to his residence so he could be present during the execution of

the residential warrant. The front seat passenger, Bruno Fernandes, was released. The TARGET TELEPHONES were in the center console of LOPES' vehicle.

6. Upon arrival at 121 South Walnut Avenue, where LOPES resides with his family, Detective Brian Ball showed LOPES a copy of the search warrant and advised him of his *Miranda* rights which he acknowledged understanding. Peaceful entry into the residence was made and there were no occupants present at the time. A short time later, LOPES' step-father arrived and was given a copy of the residential warrant. LOPES' step-father advised the officers that LOPES exclusively occupies and resides in the basement of the residence.

7. During the execution of the warrant, the following items of evidentiary value were located:

a. a Glock firearm box, black plastic holster, one 9mm Glock magazine, one .357 high capacity Glock magazine, one Smith & Wesson magazine loaded with one round of .380 ammunition, assorted rounds of ammunition and a black speed loader (basement - bedroom closet);

b. MP Bodyguard gun box containing paperwork in Anton LOPES' name (basement - bedroom closet);

c. plastic bag containing eight (8) blue pills with "A-51" marking (which field-tested positive for fentanyl); a glass jar filled with marijuana, and numerous ID cards in LOPES' name (basement - bedroom nightstand);

d. $3,285 in USC (basement - bedroom dresser); and

e. a Glock 21, .45 caliber pistol with a "auto-sear" alteration,[1] and an obliterated serial number, loaded with 13 rounds of .45 caliber ammunition including a round in the chamber (basement – inside drop ceiling).

8. Following the search of the residence, Detective Ball removed the TARGET TELEPHONES from LOPES' vehicle. Custody of the TARGET TELEPHONES was then

[1] An "auto-sear" switch converts a pistol into an automatic weapon by causing the continuous discharge of rounds from a single trigger pull, allowing the semi-automatic firearm to be operated as a machine gun.

transferred to ATF custody where they have remained, unsearched, until such time as a federal search warrant could be prepared and submitted to the Court.

9. At the time of the execution of the search warrant, LOPES was not licensed within the Commonwealth of MA to possess firearms or ammunition. Following the execution of the warrant, LOPES was charged in state court with Possession of a Machine Gun, Possession of a Class A Drug with the Intent to Distribute, Possession of a Firearm with a Defaced Serial Number, Unlawful Possession of Ammunition, Possession of a Firearm in the Commission of a Felony, Possession of a Firearm without a License, Possession of a Large Capacity Feeding Device, Improper Storage of a Firearm and Possession of a Large Capacity Firearm.

**NOB/Wendover and Probable Cause that LOPES is a Member**

10. Federal and local investigators have been involved in the investigation of NOB/Wendover for approximately two years. The investigation has involved numerous investigative techniques, including the use of confidential informants and undercover law enforcement officers, controlled purchases of narcotics and firearms, surveillance of NOB/Wendover members and associates and the places they congregate, review of social media postings by gang members, and interviews and debriefs with individuals familiar with the inner workings of the gang.

11. Based on my participation in this investigation and through my discussions with other law enforcement officers involved in this investigation, I am aware that throughout the last several years and continuing to today, NOB/Wendover members and associates have been involved in numerous shootings and violent altercations throughout the greater Boston area with rival gangs, specifically, Cameron Street. NOB/Wendover members and associates have admitted to law enforcement and others that they obtain illegal drugs and firearms from within the state of

Massachusetts and other states. During this time period, numerous NOB/Wendover members and associates have been arrested for various crimes, including homicide, possession with intent to distribute illegal drugs, illegal possession of firearms and ammunition, robbery, assault and others.

12. As stated above, law enforcement has identified LOPES as an active NOB/Wendover member. I have spoken with other law enforcement officers who have confirmed that LOPES has had numerous documented encounters with the BPD and other law enforcement agencies. During the majority of these encounters, LOPES has been in the company of other identified NOB/Wendover members and/or associates. Below are several examples of this:

a. In July of 2016, LOPES was one of several victims of a non-fatal shooting in Dorchester. LOPES was driven to the hospital in a vehicle occupied by suspected NOB/Wendover members/associates Patrick Alves and Justin Depina. In November of 2016, Justin Depina was shot in the area of 11 Wendover Street and drove himself to the hospital in the same vehicle that he used to drive LOPES to the hospital in July 2016;

b. In December of 2018, suspected NOB/Wendover associate Patrick Pina admitted himself to Boston Medical Center with a gunshot wound to his left shoulder. LOPES drove Patrick Pina to the hospital;

c. In July of 2019, BPD officers conducted a traffic stop of a vehicle driven by LOPES. The remaining occupants were identified as Wendover/NOB members Tyrone Meek and Jawad Freeman. Freeman was found to be in possession of a high-capacity magazine, oxycodone pills and a plastic bag containing suspected heroin for which he was arrested. LOPES and Meeks were released;

d. Also in July 20, 2019, fentanyl pills with the identical "A-51" marking recovered from LOPES' bedroom were seized from a vehicle occupied by NOB/Wendover members Ricky Pina (brother of Patrick Pina) and Michael Brandao. On that date, BPD officers were on patrol in the area of Dudley, Wendover and Humphries Streets due to an increase in shootings and other acts of violence, including homicide, between the Wendover/NOB gang and a rival gang known as the "Cameron Street Gang" or "Cameron." BPD officers conducted a traffic stop on a vehicle with excessive window tint and no front license plate. The vehicle was registered to Ricky Pina, who was operating the vehicle at the time. Michael Brandao was identified as the front seat passenger. The officers knew Pina to be an active NOB/Wendover member with a prior felony conviction for unlawful possession of a firearm. They also recognized Brandao as another active NOB/Wendover member who had been named in BPD safety bulletins describing

> the on-going violence between NOB/Wendover and Cameron. Based on these observations and their prior knowledge, Pina and Brandao were asked to exit the vehicle so that officers could pat them down for officer safety and conduct a protective search of the vehicle for weapons. During the search, officers recovered a plastic bag containing blue pills and a pistol with eight rounds in the magazine, one round in the chamber and an obliterated serial number. The pills, of which there were nine, were blue in color and engraved with the stamp "A 51," the same as the markings on the pills recovered from LOPES' bedroom on December 16, 2019.

13. Law enforcement has been monitoring social media sites and has observed on-line posts, photos and videos generated by NOB/Wendover gang members and associates. This includes rap music videos featuring NOB/Wendover members and associates posted on sites including YouTube and others. In these videos, gang members rap about gang-related crimes allegedly committed by NOB/Wendover members. Many on-line postings depict NOB/Wendover members and associates wearing clothing that represents their membership in, and/or association with, the gang, holding real or replica firearms, displaying gang hand signs, making threats to rival gang members, and reenacting homicides and/or shootings that the gang may have committed. Many of these videos depict specific acts that occurred while the crimes were taking place that could only be known by law enforcement or those involved with committing the crimes. LOPES has been captured on several of these social media posts and rap videos along with other known NOB/Wendover gang members and associates.

14. It is for all these reasons that I believe that LOPES is an active member of the NOB/Wendover gang.

**Probable Cause to Believe the TARGET TELEPHONES Contain Evidence, Fruits and Instrumentalities Related to Violations of the Target Offenses**

15. Based upon the facts set forth in this affidavit, there is probable cause to believe the TARGET TELEPHONES, described more fully in Attachment A, contain evidence, fruits and instrumentalities of the Target Offenses. Based on my training and experience, I am aware that

individuals frequently use cell phones to carry out, communicate about, and store records regarding their daily activities, including their commission of crimes. These tasks are frequently accomplished by sending and receiving e-mail, instant messages, and other forms of phone or internet based messages; scheduling meeting times, and creating and storing images and videos of their movements and activities.

16. Based on the investigation in this case, there is probable cause to believe the TARGET TELEPHONES will contain communications, photos, videos and other items concerning LOPES' membership in, and affiliation with, NOB/Wendover, and that those items will constitute evidence of the Target Offenses.

17. Based on my training and experience, I am aware that a common practice of street gangs such as NOB/Wendover is to act in concert with each other and commit crimes to make money to be used in support of the gang. From my training and experience, I am also aware that gang members will often post pictures and videos of proceeds obtained during these types of crimes on social media as a way to increase the gangs' status in the criminal community. They will also utilize cell phones to facilitate their illegal activities, including by communicating with other gang members, associates and/or co-conspirators before, during and after the commission of crimes to organize themselves, set up meeting times and cover up their crimes.

18. Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones can now function essentially as small computers. The TARGET TELEPHONES listed above are types of smartphone. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover,

among other things, evidence that reveals or suggests who possessed or used the device at specific times, including the times that crimes were being committed. This data can also give precise information as to where the smartphone was at a given time.

19. Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted or viewed locally or over the Internet. This is true because:

a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one;

b. Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file

c. Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task;

d. Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

## CONCLUSION

20. Based on the information described above, there is probable cause to believe that evidence exists on or in the TARGET TELPHONES related to violations of the Target Offenses, and I therefore seek authority to search for and seize the items described in Attachment B.

21. Finally, in accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for approximately 90 days until June 23, 2020, because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and/or change patterns of behavior.

______________________________
Special Agent Peter C. Kelley
Bureau of Alcohol, Tobacco, Firearms & Explosives

Subscribed and sworn to via telephone in accordance
with Federal Rule of Criminal Procedure 4.1
on March ____, 2020. March 25, 2020

____________________________________
HONORABLE M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE

